UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | | |
|---|---|---|
| **LESLEY W. COLE,** | ) | Case No. 6:11-CV-00473-SI |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**SIMON, District Judge.**

Lesley W. Cole seeks judicial review of the final decision of the Commissioner of the

Social Security Administration ("Commissioner") denying his application for Supplemental

Security Income benefits. Because the Administrative Law Judge ("ALJ") did not provide clear,

convincing, specific or legitimate reasons for rejecting the opinion of Mr. Cole's treating

physician or for discrediting Mr. Cole's own testimony, the Commissioner's decision is vacated

and this case is remanded for the calculation of benefits.

**BACKGROUND**

I.      **The Application**

Mr. Cole filed an application for Supplemental Security Income benefits in January 2008.

He alleges disability due to mental health problems, learning disabilities, and diabetes. Tr. 140.

Born in 1958, Mr. Cole was severely abused as a child, had an unstable home life, and left school

around the sixth grade. Tr. 33-34, 127, 420. Due to his childhood and family traumas, he has

been diagnosed with post-traumatic stress disorder ("PTSD"). Tr. 522. Having struggled with

alcohol and substance abuse since he was a teenager, Mr. Cole was admitted to a residential

treatment program through the Native American Rehabilitation Association ("NARA") in 2005

and again in 2006, and to another program through Volunteers of America ("VOA") in 2009. Tr.

275, 420, 477, 520. Mr. Cole also began seeking treatment for his mental health issues when he

was forty years old. Tr. 419. He takes several medications to manage his depression and anxiety

and has received counseling first from Patrick Moran, Ph.D., who is affiliated with NARA, and

later from various health care practitioners at Cascadia Behavioral Healthcare.

After an administrative hearing in November 2010, the ALJ found Mr. Cole to be not

disabled. Tr. 11, 22. The Appeals Council denied Mr. Cole's request for review, making the

ALJ's decision the final decision of the Commissioner. Tr. 2.  Mr. Cole now seeks judicial

review of the ALJ's decision.

II.     **The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Commissioner*, 648 F.3d 721, 724 (9th Cir. 2011). The five steps in the process

proceed as follows:

> 1.      Is the claimant presently working in a substantially gainful activity? If
> so, then the claimant is not disabled within the meaning of the Social Security
> Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).
>
> 2.      Is the claimant's impairment severe? If so, proceed to step three. If not,
> then the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).
>
> 3.      Does the impairment 'meet or equal' one of a list of specific
> impairments described in 20 C.F.R. Part 220, Appendix 1? If so, then the
> claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d),
> 416.920(d).
>
> 4.      Is the claimant able to do any work that he or she has done in the past?
> If so, then the claimant is not disabled. If not, proceed to step five. *See* 20
> C.F.R. §§ 404.1520(e), 416.920(e).
>
> 5.      Is the claimant able to do any other work? If so, then the claimant is not
> disabled. If not, then the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(f),
> 416.920(f).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof for the first four steps in the process. *Id.* at 953;

*see also Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). The Commissioner bears the burden of

proof at step five of the process, where the Commissioner must show the claimant can perform

other work that exists in significant numbers in the national economy, "taking into consideration

the claimant's residual functional capacity, age, education, and work experience." *Tackett v.

Apfel,*180 F.3d 1094, 1100 (9th Cir. 1999); *see also* 20 C.F.R. § 404.1566 (describing "work

which exists in the national economy"). If the Commissioner fails to meet this burden, then the

claimant is disabled.  If, however, the Commissioner proves that the claimant is able to perform

OPINION AND ORDER, Page 3

other work that exists in significant numbers in the national economy, then the claimant is not

disabled. *Bustamante*, 262 F.3d at 953-54.

### III.    The ALJ's Decision

The ALJ applied the sequential process in his decision of December 8, 2010. At step one,

the ALJ found that Mr. Cole had not engaged in substantial gainful activity since the date of his

application.  Tr. 13. At step two, the ALJ found that Mr. Cole's depressive disorder, anxiety, and

polysubstance dependence were severe impairments. *Id.* At step three, the ALJ found that

Mr. Cole does not have an impairment or combination of impairments that meets or equals one

of the specific impairments listed in the regulations. Tr. 14.

The ALJ then determined that Mr. Cole has the residual functional capacity ("RFC") to

perform medium work with some physical restrictions and limited to "unskilled work and routine

tasks with no interaction with the general public and only superficial interaction with coworkers

but no close cooperation or coordination with coworkers." Tr. 15. In reaching this conclusion,

the ALJ considered Mr. Cole's testimony but found that it was not fully credible. Tr. 15-16, 20.

The ALJ also discounted the disability opinion provided by Dr. Moran, Mr. Cole's treating

psychiatrist. Tr. 16-18.  Instead, the ALJ gave greater weight to the opinion of Donna Wicher,

Ph.D., who examined Mr. Cole in July 2008, as well as to the opinion of Bill Hennings, Ph.D.,

who completed a mental residual function assessment in August 2008 based primarily on Dr.

Wicher's report. Tr. 18-19. The ALJ further found that Mr. Cole's "conditions are well

controlled with mental health treatment, medication and therapy. Instances where claimant

relapses from his commitment to sobriety appear to result from one time, major life events such

as the death of his brother and his sister's murder." Tr. 20. The ALJ noted that Mr. Cole "has

shown an ability to work" and that various sources had questioned his motivation. Tr. 20; *see also* Tr. 18. "The fact that claimant worked in the past with his conditions suggest that claimant is capable when willing of continuing to do so." Tr. 20.

At step four, the ALJ found that Mr. Cole had no past relevant work, Tr. 21, meaning work experience from the last fifteen years that lasted long enough for Mr. Cole to learn how to do it and that constituted substantial gainful activity, *see* 20 C.F.R. §§ 404.1565(a), 416.965(a).[1] At step five, the ALJ heard testimony from a vocational expert ("VE"), who opined that someone with the RFC identified by the ALJ would be able to perform the work of Janitor (DOT #381.687-018), Kitchen Helper (DOT #318.687-010), and Clothing Sorter (DOT #222.687-014). *Id.* Based on this testimony, the ALJ found that Mr. Cole could perform work that exists in significant numbers in the national economy and is therefore not disabled. Tr. 22.

## DISCUSSION

### I.  Standard of Review

The court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Sample v. Schweiker*, 694 F.2d

---

[1] "Substantial gainful activity means work that – (a) involves doing significant and productive physical or mental duties; and (b) is done (or intended) for pay or profit." 20 C.F.R § 404.1410; *see also id.* § 416.910.

639, 642 (9th Cir. 1982). "However, a reviewing court must consider the entire record as a whole

and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v.

Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880,

882 (9th Cir. 2006) (quotation marks omitted)). The reviewing court also may not affirm the

Commissioner on a ground upon which he did not rely. *Id.*

## II.    Credibility Determination

Mr. Cole challenges the ALJ's finding that his testimony was not fully credible. An ALJ

may only reject a claimant's testimony only after identifying specific, clear and convincing

reasons that are supported by substantial evidence. *Holohan v. Massanari*, 246 F.3d 1195, 1208

(9th Cir. 2001). The court notes that the ALJ's opinion contains boilerplate language that makes

judicial review of the credibility determination unnecessarily difficult.[2] "[G]eneral findings are

an insufficient basis to support an adverse credibility determination." *Id.* Regardless, the few

specific reasons that the ALJ does provide for discrediting Mr. Cole's testimony are not

supported by substantial evidence, much less are they clear and convincing.

First, the ALJ states that Mr. Cole's activities of daily living are inconsistent with the

limitations Mr. Cole alleges.  Tr. 16, 20. The ALJ notes that at the hearing, Mr. Cole testified to

spending significant time in his room, while in his written submissions, Mr. Cole reported "going

outside 'constantly,' including the library and community center." Tr. 20. The ALJ also remarks

that, in his written statement, Mr. Cole states both that he is a loner and "that he goes out of the

---

[2] In particular, the boilerplate that "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment" is unhelpful. *See Leitheiser v. Astrue*, 2012 WL 967647, at *9-10 (D. Or. Mar. 16, 2012) (collecting cases criticizing this language).

house daily, visiting the library and community center and attending social gatherings." *Id.* The

ALJ ignores, however, the repeated and clear statements in Mr. Cole's written submissions that

he was living in a homeless shelter at the time. *See, e.g.*, Tr. 195 ("I live in a men's shelter. We

don't cook there just a place too [sic] sleep."); Tr. 196 ("I'm homeless I live in a men's

shelter."). Shelters typically require patrons to leave the shelter during the day. At the time of the

hearing, conversely, Mr. Cole was living with his long-term partner and was not required to

leave the house on a daily basis. Tr. 34. The inconsistency identified by the ALJ is thus not

supported by substantial evidence. *Cf. Nguyen v. Chater*, 100 F.3d 1462, 1465-66 (9th Cir. 1996)

(criticizing ALJ's reliance on purported inconsistencies that were based on mischaracterizations

of the record evidence).

The ALJ also sees contradictions between Mr. Cole's professed limitations and his ability

to take care of his personal needs, maintain a long-term relationship, "brag about his

grandchildren," and work for a friend. Tr. 20. Mr. Cole's few relationships – relationships that

his treatment records indicate are often tenuous – are not inconsistent with his statements about

being a loner and having trouble interacting with other people. *See, e.g.*, *Vertigan v. Halter*, 260

F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a

plaintiff has carried on certain daily activities … does not in any way detract from her credibility

as to [his] overall disability. One does not need to be 'utterly incapacited' in order to be

disabled." (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). That Mr. Cole can meet

his personal needs also does not contradict his testimony that he is unable to work full-time. *See,*

*e.g.*, *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996).

The ALJ's conclusion that Mr. Cole is capable of working and only lacks the motivation to do so is not supported by the evidence and is not a clear and convincing reason for rejecting Mr. Cole's testimony. The ALJ states repeatedly that Mr. Cole "has shown the ability to work." Tr. 16; *see also* Tr. 18, Tr. 20. He cites to Mr. Cole's plan in 2009 to work eight hours per week for a friend at minimum wage and to work twenty-four hours a week as a caretaker on his uncle's farm for less than minimum wage. Tr. 528, 531. Mr. Cole had difficulty obtaining this work, which was a required component of his treatment through the VOA; the record does not indicate how long he engaged in this work; and the ALJ found that Mr. Cole had no past relevant work, indicating that the ALJ did not find that this work amounted to substantial gainful activity. Tr. 21, 528, 537. The ALJ also cites to a part-time, seasonal job that Mr. Cole last held in 2005 and Mr. Cole's brief period of full employment that appears to have ended in 1996. Tr. 20, 185-188. The claimant's work history prior his application for disabilities benefits is not a clear and convincing reason for rejecting the claimant's testimony that he is no longer capable of maintaining employment, particularly where, as here, that work was not otherwise found to be past relevant work. The ALJ also cites Sung-Joon Cho, M.D., an examining physician, as opining that Mr. Cole's "major limitation to work is secondary to his lack of motivation." Tr. 20. This comment is taken out of context. Dr. Cho, in evaluating Mr. Cole's *physical* complaints, noted that "[i]t seems like his major [physical] limitation is secondary to his lack of motivation, *depression, and anxiety*." Tr. 343 (emphasis added). That is, Dr. Cho referred to a lack of motivation as a symptom of Mr. Cole's mental health issues, not as a sign of malingering. The ALJ notes that Mr. Cole missed numerous medical appointments, suggesting that this too demonstrates a lack of motivation, Tr. 20, but such reasoning again confuses the symptoms of

OPINION AND ORDER, Page 8

Mr. Cole's documented mental health problems with a purported lack of motivation. *Cf. Reddick*

*v. Chater*, 157 F.3d 715, 723 (9th Cir. 1998) (concluding that the ALJ's "approach and

conclusions do not fully account for the nature" of claimant's chronic fatigue syndrome and its

symptoms).[3]

Finally, the medical record as a whole is not inconsistent with Mr. Cole's self-described

limitations. The ALJ's repeated assertions that Mr. Cole's "mental health conditions were

generally well controlled with therapy and medications when he was compliant and taking them"

is not supported by the record. Tr. 17; *see also* Tr. 20. Treatment notes indicate cyclical relapses,

not always (as the ALJ suggests) triggered by traumatic family events, as well as repeated

adjustments of the type and dosage of medications used to control Mr. Cole's anxiety,

depression, and insomnia.[4] *See, e.g.*, Tr. 436, 478, 539, 541, 563, 575-578. The ALJ reads the

treatment notes selectively, relying on isolated notes by nurse practitioners that Mr. Cole

reported having less anxiety. *See* Tr. 17. Treatment notes must be read in the context of the

overall diagnostic picture: "That a person who suffers from severe panic attacks, anxiety, and

depression makes some improvement does not mean that the person's impairments no longer

seriously affect [his] ability to function in a workplace." *Holohan*, 246 F.3d at 1205.

In sum, the ALJ did not give clear and convincing reasons, supported by substantial

evidence, for discrediting Mr. Cole's testimony.

---

[3] The ALJ also cites to the comment by Dr. Wicher that Mr. Cole is not highly motivated to work. Tr. 20. This is a correct representation of Dr. Wicher's opinion, but for the reasons discussed below, Dr. Wicher's opinion as an examining physician does not outweigh the opinion of Dr. Moran, Mr. Cole's treating psychiatrist, who opined that Mr. Cole was motivated in his treatment, was not exaggerating his symptoms, and was not malingering. *See* Tr. 522-524.

[4] The ALJ's suggestion that some of the relapses were self-inflicted also ignores the possibility that the failure to take medication may itself be a symptom of Mr. Cole's major depressive disorder.

OPINION AND ORDER, Page 9

### III.    Medical Evidence

Mr. Cole also argues that the ALJ erred when he discounted Dr. Moran's opinion that

Mr. Cole is disabled. In a letter dated September 2010, Dr. Moran explained that he had known

Mr. Cole for six years and had treated Mr. Cole extensively through both inpatient and outpatient

sessions, but he acknowledged that he had not seen Mr. Cole over the last couple of years.

Tr. 522. Dr. Moran explained that Mr. Cole's PTSD causes Mr. Cole anxiety that "is a daily

occurrence and persistent and usually culminates in panic attacks multiple times throughout the

day." Tr. 522-523. He believes that Mr. Cole "truly is motivated in treatment for his mental

health conditions and addiction issues," but that Mr. Cole's learning disabilities prevent him

from retaining information and coping skills. Tr. 523. Dr. Moran assessed Mr. Cole as having

"an extreme limitation in social functioning due to his social phobia and PTSD" and "an extreme

limitation in concentration, persistence and pace due to his high state of anxiety." *Id.* He opined:

> I do not believe Mr. Cole can sustain full-time employment at even a simple
> job with no coworker contact. He would be off-pace, forget instructions, be
> unable to persist, be unable to show up at work or remain at work, and this
> would likely result in loss productivity d[ue] to missing more than two days
> a month, every month, from any full-time job he would obtain.
>
> I must emphasi[ze] emphatically that for Mr. Cole, these limitations are
> chronic and unlikely to change. Furthermore, they … would remain even if
> drug and alcohol use were not used as the main method of 'coping.'

*Id.* Dr. Moran concluded his opinion letter by noting that, "[i]n my 20 plus years of working in

the mental health field, of which 15 have been in community mental health, Mr. Cole has

exhibited some of the most impaired and intractable symptoms of social anxiety, and anxiety

related behaviors I have encountered." Tr. 524. He also noted that "my early research and

dissertation was on malingering. I have seen no indication whatsoever that Mr. Cole has been

malingering or exaggerating his symptoms in all these years I have known him." *Id.*

In considering medical evidence, "a treating physician's opinion carries more weight than

an examining physician's, and an examining physician's opinion carries more weight than a

reviewing physician's." *Holohan*, 246 F.3d at 1202. "In addition, the regulations give more

weight to opinions that are explained than to those that are not, … and to the opinions of

specialists concerning matters relating to their specialty over that of nonspecialists …." *Id.*

(citations omitted). To reject the uncontroverted opinion of a treating doctor, the ALJ must

provide clear and convincing reasons supported by substantial evidence. *Ryan v. Commissioner*,

528 F.3d 1194, 1198 (9th Cir. 2008). While a physician's opinion on the ultimate issue of

disability does not bind the Commissioner, the Commissioner may only reject such opinions

based on clear and convincing reasons. *Reddick*, 157 F.3d at 725; *see also Rodriguez v. Bowen*,

876 F.2d 759, 762 (9th Cir. 1989) ("[T]he ALJ must give sufficient weight to the subjective

aspects of a doctor's opinion. … This is especially true when the opinion is that of the treating

physician."). If the physician's opinion on the issue of disability is controverted by other

substantial evidence in the record, it still may only be rejected for "specific and legitimate

reasons." *Reddick*, 157 F.3d at 725.

Contrary to this standard, the ALJ has given the greatest weight to the opinions of an

examining and a reviewing doctor without providing legitimate reasons for discounting the

opinion of the claimant's treating psychiatrist. The ALJ asserts that Dr. Moran's opinion is

inconsistent with the opinion of Nick Drakos, M.D., who was Mr. Cole's primary care physician.

Tr. 18. The ALJ does not identify any specific inconsistencies, however, and this court can find

none. Dr. Drakos's treatment notes regarding Mr. Cole's mental health are not as detailed as Dr.

Moran's, but this is not surprising: Dr. Moran was Mr. Cole's psychiatrist, while Dr. Drakos was

his general practitioner. Significantly, Dr. Drakos agreed with Dr. Moran that Mr. Cole struggles

with his "major depressive disorder." *See, e.g.*, Tr. 478; *see also Ryan*, 528 F.3d at 1200-01

("Although Ryan certainly described her symptoms in more detail during her comprehensive

psychological evaluation than she did in regular visits to her family doctor, that does not render

[the psychologist's] opinion inconsistent with [the family doctor's]. … Nor are the references in

[the family doctor's] notes that Ryan's anxiety and depression were 'improving' sufficient to

undermine the repeated diagnosis of those conditions, or [the pyschologist's] more detailed

report.").

The ALJ also discredits Dr. Moran's opinion as "based, at least partially, on symptoms

related to drug and alcohol abuse." Tr. 18. To the contrary, Dr. Moran made clear that his

opinion would remain the same even if alcohol and drug abuse were no longer an issue for Mr.

Cole. Tr. 523. The ALJ further asserts that Dr. Moran's opinion is contradicted by Mr. Cole's

statements about his activities of daily living and his "ability to sustain work in the past." Tr. 18.

As explained above, these assertions are not supported by substantial evidence in the record.

The opinions on which the ALJ did rely are not sufficient to justify the rejection of the

treating physician's opinion. Dr. Wicher examined Mr. Cole in July 2008 and diagnosed him as

having recurrent mild depressive disorder, among other mental health problems. Tr. 339. She

suggested that his deficits in concentration, persistence and pace were moderate, and she noted

that he "does not appear to be highly motivated to return to work." Tr. 340. The ALJ stated that

this opinion is consistent with the opinions of other treating physicians, but that is not correct.

OPINION AND ORDER, Page 12

Both Dr. Drakos and Dr. Moran repeatedly diagnosed Mr. Cole as having *major* depressive disorder. Only Dr. Moran remarked on his deficits in concentration, persistence and pace, and he assessed them as "extreme."[5] To the extent Dr. Wicher's assessment differed from that of the treating physicians, her one-time examination may have coincided with a euthymic period for Mr. Cole, given the cyclical nature of his disease. This limited perspective is one of the reasons why the opinion of an examining physician is "insufficient to outweigh the opinion of a treating physician who cared for [the claimant] over a period of time and who provided an opinion supported by explanation and treatment records." *Holohan*, 246 F.3d at 1207; *see also Smolen*, 80 F.3d at 1285 ("Because treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual, their opinions are given greater weight than the opinions of other physicians.").

Dr. Hennings' brief assessment was based on Dr. Wicher's report, Dr. Cho's report, and one other evaluation by a nurse; he does not appear to have consulted Mr. Cole's full medical record, including the treatment notes of Dr. Moran and Dr. Drakos. Tr. 361. His assessment contains minimal analysis and mostly consists of checkboxes and brief conclusions. *See* Tr. 349-365. The opinion of a reviewing physician "who merely checked boxes without giving supporting explanations" cannot outweigh the opinion of a treating physician that is supported by explanation and treatment records. *Holohan*, 246 F.3d at 1207; *see also Ryan*, 528 F.3d at 1201

---

[5] The ALJ also may have misstated Dr. Wicher's assessment, as she did not formally assess Mr. Cole's pace and only noted that Mr. Cole's deficits in concentration, persistence, and pace *appear* to be moderate. Tr. 340; *cf. Holohan*, 246 F.3d at 1206 n.8 (criticizing ALJ for mischaracterizing examining physician's opinion "by changing 'may' to 'could' perform simple tasks").

OPINION AND ORDER, Page 13

(reviewing physician's "bare conclusion after checking a series of boxes" does not outweigh the opinions of examining and treating doctors).

In sum, substantial evidence does not support the specific reasons the ALJ gave for discounting Dr. Moran's reasoned opinion of disability.

## IV.     Remand for Award of Benefits

While the usual course when the ALJ has committed reversible error is to remand for further proceedings, this court may remand for an award of benefits if "the record is fully developed and it is clear from the record that the ALJ would be required to award benefits." *Holohan*, 246 F.3d at 1210. This court "should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits" when the following three conditions are met: "(1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

The Ninth Circuit has repeatedly credited evidence as true when the ALJ failed to provide clear and convincing reasons for discounting the testimony of the claimant and the opinion of the claimant's treating and examining physicians. *See Orn*, 495 F.3d at 640; *Benecke*, 379 F.3d at 594; *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004); *Rodriguez*, 876 F.2d at 763. Because the ALJ did not provide clear and convincing reasons for rejecting the testimony of Mr. Cole and the disability opinion of Dr. Moran, this court credits that evidence as true. As for the second

factor, the record is fully developed. Finally, Dr. Moran's credited opinion establishes that Mr.

Cole is disabled for two reasons.

First, Dr. Moran's opinion establishes that Mr. Cole should have been found disabled at

step three of the sequential process. To qualify as disabled under step three due to a mental

disorder, the claimant "must satisfy criteria in paragraph A of the listings, which medically

substantiate the presence of a mental disorder, and the criteria in paragraphs B or C, which

describe the functional limitations associated with the disorder which are incompatible with the

ability to work." *Holohan*, 246 F.3d at 1203 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1,

§ 12.00A). There is no dispute that Mr. Cole satisfies the criteria in paragraph A. Under

paragraph B, the paragraph A impairments must result in at least two of the following four

conditions:

1.  Marked restriction of activities of daily living; or

2.  Marked difficulties in maintaining social functioning; or

3.  Marked difficulties in maintaining concentration, persistence, or pace; or

4.  Repeated episodes of decompensation, each of extended duration.

*See, e.g.,* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(B) (Affective Disorders). In finding that

Mr. Cole did not satisfy the paragraph B criteria, the ALJ relied on Dr. Hennings' review.

Dr. Hennings assessed Mr. Cole has having mild restrictions in activities of daily living;

moderate difficulties in social functioning; moderate difficulties in concentration, persistence and

pace; and no episodes of decompensation. *See* Tr. 14. Dr. Moran, however, assessed Mr. Cole as

having "*extreme* limitation in concentration, persistence and pace" and "*extreme* limitation in

OPINION AND ORDER, Page 15

social functioning." Tr. 523 (emphasis added).[6] Dr. Moran's opinion was reasoned and supported

by the medical record. When credited as true and given its proper weight vis-à-vis the review of

Dr. Hennings, this opinion establishes that Mr. Cole's affective and anxiety disorders result in at

least two of the paragraph B conditions. Mr. Cole therefore qualifies as disabled under step three

of the sequential process. *See Holohan*, 246 F.3d at 1204, 1210-11.

      Second and alternatively, Dr. Moran's opinion and the testimony of the VE demonstrate

that Mr. Cole should have been found disabled at step five of the sequential process. At the

hearing, Mr. Cole's counsel asked the VE if someone with the RFC identified by the judge could

sustain competitive employment if he also had a marked limitation in concentration, persistence,

and pace *or* if he had to miss more than two days a month from work due to his depression and

anxiety. Tr. 59. These are both conditions identified by Dr. Moran in his opinion letter. Tr. 523.

The VE testified that a worker with either of those additional limitations would not be able to

sustain competitive employment in the local or national economy. Tr. 59. Thus, if Dr. Moran's

opinion is credited as true, Mr. Cole would qualify as disabled at step five of the sequential

process. *See Reddick*, 157 F.3d at 729.[7]

---

    [6] "Marked," as used in the paragraph B criteria, "means more than moderate but less than extreme." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00C.

    [7] Mr. Cole also argues that the ALJ erred in discounting the statements of two lay witnesses. While not necessary for the disposition of this case, the court notes that the ALJ erred when he dismissed the statement of Sheri Butler, Mr. Cole's sister, solely for the reason that, "[b]y virtue of her relationship with claimant, the witness cannot be considered a disinterested third party witness." Tr. 19. "Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). However, "[t]he fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony." *Smolen*, 80 F.3d at 1289; *see also Valentine v. Commissioner*, 574 F.3d 685, 694 (9th Cir. 2009). The ALJ must give a germane reason *other*

## CONCLUSION

For the reasons stated above, the Commissioner's decision that Mr. Cole is not disabled is

REVERSED and REMANDED for the immediate award of benefits.


Dated this 2nd day of May, 2012.


      /s/ Michael H. Simon
Michael H. Simon
United States District Judge

---

*than the lay witness's familial relationship to the claimant* for disregarding the lay witness's
testimony.